UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| WILLIAM J. ADAMS, ET AL. | § § § | |
| Plaintiffs. | § § § | |
| VS. | § § | CIVIL ACTION NO. 3:18–CV–00185 |
| ALCOLAC, INC., ET AL. | § § § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION

Before the Court is Defendant Alcolac, Inc. and Rhodia Inc.'s Motion for Summary Judgment and Memorandum in Support ("Motion for Summary Judgment"). *See* Dkt. 17. The Motion for Summary Judgment was referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). *See* Dkt. 35.

After reviewing the motion, the responsive briefing, and applicable case law, the Court recommends that the Motion for Summary Judgment be **GRANTED** and this suit be **DISMISSED**.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are comprised of military personnel or their family members, who allege that during the 1991 Gulf War[1] the military personnel suffered serious injuries after the

---

[1] In August 1990, Iraq invaded Kuwait. The United Nations authorized a coalition force to liberate Kuwait, and on January 14, 1991, Congress passed a joint resolution authorizing the use of military force against the Government of Iraq ("Joint Resolution"). *See* Authorization for Use of Military

Government of Iraq exposed them to mustard gas. In this lawsuit, Plaintiffs, who will be referred to as "the Gulf War Veterans," seek relief for damages sustained as a result of this exposure. In pursuit of this relief, the Gulf War Veterans have sued two companies that they believe provided the Government of Iraq material support in creating the mustard gas: Alcolac, Inc. ("Alcolac") and Rhodia Inc. ("Rhodia"), a successor owner of Alcolac.[2]

In the years leading up to the Gulf War, Alcolac manufactured the chemical Thiodiglycol ("TDG"). TDG is a chemical solvent that has lawful applications in the textile industry, in the manufacture of ink, and in various other industries. However, TDG is also a chemical precursor often used to create mustard gas.

In the 1980s, Alcolac International, Inc. ("Alcolac International"), a non-party and former subsidiary of Alcolac, was responsible for internationally marketing and selling the TDG manufactured by Alcolac. Between 1984 and 1987, several years before the Gulf War, Alcolac International sold large quantities of TDG to various third-party buyers—none of whom are defendants in this suit. Some of those third-party buyers transhipped the TDG they purchased from Alcolac International to Pakistan and Iran. Other third-party buyers transhipped the TDG they purchased to Iraq, where it was used to create mustard gas.

As a result of the transhipments that made it to Pakistan and Iran, the United States charged Alcolac International with violating the Export Administration Act ("EAA") on

---

Force Against Iraq Resolution, Pub. L. 102–1, 105 Stat. 3 (1991); Dkt. 17-11. The war that flowed from the Joint Resolution became known as the Gulf War.

[2] The Court refers to Alcolac and Rhodia collectively as "Defendants."

the basis that it knew or should have known that the ultimate destination listed on the shipping declaration filed with the U.S. Customs Service was not the intended destination thereby facilitating the re-export to Pakistan and Iran. The United States did not charge Alcolac International for violating the EAA based on the sales that were ultimately transhipped to Iraq. Nonetheless, the Gulf War Veterans contend that Defendants should be held responsible for their injuries in this lawsuit because, acting through Alcolac International, Defendants intended to aid Iraq in creating mustard gas.

This case is certainly not new. In June 1994, as a part of a broader products liability case, the substance of this suit was first alleged in Cause No. 94-C-1392; *Coleman, et. al. v. ABB Lummus Crest, Inc., et al.*; In the 23rd District Court of Brazoria County, Texas. The *Coleman* suit included allegations related to injuries caused by both sarin and mustard gas, both of which were used in the Gulf War. In 2008, the state court severed the claims related to injuries caused by mustard gas from those caused by sarin gas, and the mustard gas claims moved forward in Cause No. 46491; *Adams, et al. vs. Alcolac, Inc., et al.*; In the 23rd Judicial District Court of Brazoria County, Texas.

During the pendency of *Adams* in state court, it was decided that one plaintiff, Dr. Victor Alarcon, would serve as the bellwether case. Defendants moved for summary judgment on all of Dr. Alarcon's claims: negligence; gross negligence; negligence per se; strict liability; and a violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COMM. CODE § 24.001 *et seq.* The bellwether case failed because, as explained by the Texas Court of Appeals, Dr. Alarcon presented "no evidence from which a reasonable fact finder could conclude that [he] was exposed to mustard gas made with

Alcolac's TDG." *Alarcon v. Alcolac Inc.*, 488 S.W.3d 813, 828–29 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). In other words, Dr. Alarcon failed to carry his burden to demonstrate causation on each of his claims. *See id.* at 829.

Following their success against Dr. Alarcon, Defendants moved for summary judgment against the Gulf War Veterans. Prior to the state court ruling on the motion, the Gulf War Veterans filed a Fourth Amended Petition in Intervention, adding two new claims, including a claim brought under federal law. *See* Dkt. 1-2 at 165–91.

Based on the inclusion of the federal claim, Defendants removed the *Adams* case to this Court on June 27, 2018. *See* Dkt. 1. In this Court, the Gulf War Veterans filed a Fifth Amended Petition in Intervention ("Active Complaint"). *See* Dkt. 14. The Active Complaint is substantially similar to the Fourth Amended Petition that was filed in state court. The alleged causes of action include: negligence; gross negligence; negligence per se; strict liability; a violation of TUFTA; civil conspiracy; and a violation of the Anti-Terrorism Act (the "ATA"), 18 U.S.C. § 2333 *et seq*. *See* Dkt. 14. The only real difference between the Fourth Amended Petition and the Active Complaint is that the Gulf War Veterans have beefed up their factual allegations.

Since removal, the Gulf War Veterans have stipulated that their product liability and negligence related claims were foreclosed by the decision in *Alarcon*, 488 S.W.3d 813. *See* Dkts. 9, 12. Thus, at this juncture, the only claims remaining before the Court are: a

4

violation of the ATA; civil conspiracy; and a violation of TUFTA.[3] Defendants move for summary judgment on all three claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact does not exist unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (citation omitted). "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (citation omitted). If the burden of production at trial "ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310–11 (5th Cir. 2017). Once a party "meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270. The party opposing

---

[3] Notwithstanding the Gulf War Veterans' stipulations, the Active Complaint still contains the product liability and negligence related claims. As a result, Defendants have moved for summary judgment on the Gulf War Veterans' product liability and negligence related claims. In their response to Defendants' motion, the Gulf War Veterans do not attempt to defend their product liability and negligence related claims. The Court is, therefore, satisfied that those claims are no longer before the Court. *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned.") (collecting cases).

summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. [It] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (citations and quotation marks omitted). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (quotation marks and citation omitted).

## DISCUSSION

**I.    VIOLATION OF THE ATA**

The ATA provides a private right of action to "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States." 18 U.S.C. § 2333(a). A claim brought under the ATA is also known as a "Direct Liability Claim." To prevail on a Direct Liability Claim, a plaintiff must show: "(1) an injury to a U.S. national, (2) an act of international terrorism, and (3) causation." *Shaffer v. Deutsche Bank AG*, No. 16-CR-497-MJR-SCW, 2017 WL 8786497, at *3 (S.D. Ill. Dec. 7, 2017).

In 2016, Congress passed the Justice Against Sponsors of Terrorism Act ("JASTA"), which amended the ATA to impose liability on "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed" an act of international terrorism. JASTA § 4, Pub. L. No. 114-222, 130

Stat. 852 (2016) (codified at 18 U.S.C. § 2333(d)). A claim brought under Section 2333(d) is also known as an "Aiding and Abetting Claim."

In the Active Complaint, the Gulf War Veterans specifically identify JASTA as being the basis of their federal claim. *See* Dkt. 14 at 22. For this reason, Defendants advanced several arguments against the Gulf War Veterans based on their belief that the Gulf War Veterans had advanced a claim under JASTA, as opposed to under the ATA. In responding to Defendants' motion, the Gulf War Veterans argue that their claim is not brought under JASTA; instead, it is a hybrid Direct Liability Claim, which has certain features of an Aiding and Abetting Claim, as described in *Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief And Dev.*, 291 F.3d 1000 (7th Cir. 2002) and *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008).

Defendants question the propriety of the Gulf War Veterans raising this "new theory" based on the ATA at this late stage in response to the Motion for Summary Judgment. Ordinarily, the Court would reject a new theory that arises for the first time in response to a summary judgment motion. *See, e.g., Byest v. Wal-Mart Stores, Inc.*, No. 4:13-CV-0009-DMB-JMV, 2014 WL 3891295, at *7 (N.D. Miss. Aug. 7, 2014) (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 n.12 (5th Cir. 2005) ("To the extent this argument attempts to assert a new theory of liability, such claim must be rejected."). But, "[b]ecause the court can dispense with [the Gulf War Veterans' seemingly] new theory with little difficulty, the court assumes, *arguendo*, that the [ATA] theory is properly before the court." *Kaprantzas v. CitiMortgage, Inc.*, No. 3:17-CV-0780-D, 2018 WL 4852875, at *5 n.10 (N.D. Tex. Oct. 5, 2018).

Defendants assert several reasons that the Gulf War Veterans' Direct Liability Claim should fail, including an argument that the "act of war" exemption to both the ATA and JASTA applies in this case. Because this argument is potentially dispositive as to the Gulf War Veterans' Direct Liability Claim, the Court will consider it first.

**Act of War Exemption.** Defendants contend that the Gulf War Veteran's injuries were the result of an "act of war" and, therefore, fall within an exemption to the ATA and JASTA set forth in 18 U.S.C. § 2336(a). *See* Dkt. 17 at 26–27. Section 2336(a) states: "[n]o action shall be maintained under section 2333 of this title for injury or loss by reason of an act of war." 18 U.S.C. § 2336(a). The term "act of war" is defined as "any act occurring in the course of (A) declared war; (B) armed conflict, whether or not war has been declared between two or more nations; or (C) armed conflict between military forces of any origin." 18 U.S.C. § 2331(4). Defendants contend that the Joint Resolution authorized combat in the Gulf War and, therefore, the act of war exemption applies because the Gulf War Veterans' "claim is based on events during an armed conflict between two nations' military forces." Dkt. 17 at 27 (citation omitted).

The Gulf War Veterans try to escape the application of the act of war exemption, arguing that "[b]y using chemical weapons, Iraq violated the customary rules of war and therefore the use of mustard gas was not an act occurring in the course of an armed conflict." Dkt. 24 at 23. The Gulf War Veterans' argument relies heavily on two inapposite cases: *Biton v. Palestinian Interim Self-Gov't Auth.*, 412 F. Supp. 2d 1 (D.D.C. 2005) and *Estate of Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153 (D.D.C. 2006).

8

In *Biton*, the plaintiffs were an American woman whose husband died in a Gaza Strip bus bombing and another American woman who was wounded on that same bus. *See* 412 F. Supp. 2d at 2. The *Biton* court held that "[t]he circumstances of the alleged attack— on a recognized school bus full of students and teachers—and the status of those noncombatants lead the Court to conclude that the attack did not occur 'during the course of' an armed conflict as a matter of law." *Id.* at 10–11. Similarly, in *Klieman*, the plaintiffs were the estate, survivors, and heirs of an American citizen killed in a terrorist attack on a public transport bus in Israel. *See* 424 F. Supp. 2d at 155. The *Klieman* court held:

> As a matter of law, an act that violates established norms of warfare and armed conflict under international law is not an act occurring in the course of armed conflict. An armed attack on a civilian bus, such as the one plaintiffs have alleged in the complaint, violates these established norms.

424 F. Supp. 2d at 166 (collecting cases). Together, *Biton* and *Kliesman* demonstrate the courts' overriding concern with "maintain[ing the] distinction between 'acts of war,' from which the ATA provides no relief, and 'acts of terrorism,' which can be the basis of a federal lawsuit leading to a monetary recovery." *In re Sept. 11 Litig.*, 931 F. Supp. 2d 496, 508 (S.D.N.Y. 2013).

Unlike *Biton* and *Kliesman*, the facts involved in this case do not involve injuries sustained by non-combatant civilians at the hands of terrorists during an armed conflict. Instead, the Gulf War Veterans are soldiers (or their family members) who the United States deployed to do battle with the Government of Iraq by virtue of, and pursuant to, the Joint Resolution. Importantly, the Joint Resolution specifically states that it was passed, among other reasons, because "Iraq's conventional, *chemical*, biological, and nuclear

9

weapons and ballistic missile programs and its demonstrated willingness to use weapons of mass destruction pose a grave threat to world peace." Dkt. 17-11 at 2 (emphasis added). In other words, the very act—use of chemical weapons—that the Gulf War Veterans argue "cannot qualify as an act occurring 'in the course of an armed conflict,'" is expressly identified as part of the United States' reason for passing the Joint Resolution and sending troops into the fray. Dkt. 24 at 25. These facts take this matter well outside of the purview of *Biton* and *Kliesman*—which both involved injuries to non-combatant civilians—and place the Gulf War Veterans' claim squarely in the class of claims Congress specifically intended to exempt. As explained by both houses of Congress:

> [Section 2336] excludes from the scope of any civil action a claim brought on account of "an act of war." The intention of this provision is to bar actions for injuries that result from military action by recognized governments as opposed to terrorists, even though governments also sometimes target civilian populations. Injuries received by noncombatants as a result of open, armed conflict, including civil war, should not be actionable.

H.R. REP. 102-1040 at 7 (1992); S. REP. 102-342 at 46 (1992).

This legislative history, combined with the text of the ATA, totally undermines the Gulf War Veterans' argument that Iraq's mustard gas attacks did not occur "in the course" of a war because they were "illegal" under international laws of war. The text of the ATA's act of war exemption makes no reference to international law or the law of war. By contrast, other parts of the ATA specifically incorporate various bodies of law. *See* 18 U.S.C. § 2332f(d)(1) (exempting from criminal jurisdiction to punish perpetrators of bombings of places of public use "the activities of armed forces during an armed conflict, as those terms are understood under the law of war"); *id.* § 2332f(e)(12) (in definitions

section applicable solely to § 2332f, defining "state" as having "the same meaning as the term has under international law") (emphasis added). This militates strongly against interpreting the act of war exemption in conjunction with any particular body of international law. *See Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 172–73 (1st Cir. 2006) ("It is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks, brackets, and citation omitted). Furthermore, Congress clearly expressed its intent that the act of war exemption should apply to certain acts that would be inconsistent with the law of war. Indeed, Congress expressly recognized that wartime governments "sometimes target civilian populations" and that such targeting "should not be actionable." H.R. REP. 102-1040 at 7 (1992); S. REP. 102-342 at 46 (1992).[4] Thus, it cannot be true that Congress intended for the act of war exemption to only apply to conduct consistent with the norms of war. In light of this clear legislative intent, "[i]t would be a mistake to interpret [the statute to include a] matter which the committee reports of both houses of Congress specifically indicated they intended to exempt." *Ginsburg, Feldman & Bress v. Fed. Energy Admin.*, 591 F.2d 717, 721 (D.C. Cir. 1978).

---

[4] This undermines the Gulf War Veterans' additional argument that the act of war exemption does not apply because the attacks that caused at least some of their injuries were directed at Shia Muslim civilians, as opposed to combatants.

Given the facts of this case, the Court finds that the Gulf War Veteran's injuries were the result of "acts of war" and, therefore, fall within the exemption under Section 2336.  *See Stutts v. De Dietrich Grp.*, No. 03-CV-4058 (ILG), 2006 WL 1867060, at *4 (E.D.N.Y. June 30, 2006) ("Plaintiffs' allegations that the allegedly unlawful acts occurred during the '1991 Persian Gulf War' put this case squarely within the exemption under § 2336 for 'acts of war.'").[5]  Accordingly, the Gulf War Veterans' ATA claim must fail.

**Other Arguments.**  Even if the Court found that the act of war exemption did not apply, Defendants would still prevail based on some of their other arguments.  For example, Defendants' causation argument is compelling.  The case law is clear at this point that to prevail on an ATA claim a plaintiff must make a showing of proximate cause.  *See Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019); *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391 (7th Cir. 2018); *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018); *Fields v. Twitter, Inc.*, 881 F.3d 739, 744–45 (9th Cir. 2018); *Rothstein v. UBS AG*, 708 F.3d 82, 95–96 (2d Cir. 2013).  The exact parameters of proximate cause are less than clear, but one court has noted that "foreseeability, directness, and the substantiality of the defendant's conduct—are relevant to the inquiry." *Kemper*, 911 F.3d at 392.  In this case, Defendants—assuming the Court stretches and attributes Alcolac International's conduct to Defendants—sold TDG to third parties several years before the Gulf War.[6]  Those third

---

[5] In *Stutts*, the court considered the detonation of Iraqi chemical weapons by the Coalition forces during the Gulf War in 1991, which allegedly exposed plaintiffs to toxic agents. *See* 2006 WL 1867060, at *1.  Although the detonation took place after a ceasefire was declared, the court concluded that the case fit "squarely within the [act of war] exemption." *Id.* at *4.

[6] In their reply brief, Defendants object to the Gulf War Veterans' summary judgment evidence, arguing that some of the Gulf War Veterans' exhibits are "unauthenticated, [constitute] hearsay

parties in turn provided the TDG to Iraq, which in turn used the TDG to produce mustard gas. This means that, as argued by Defendants, the causal chain in this case is years long, and the Gulf War Veterans' claim relies on stacked inferences to connect Defendants to Iraq and the mustard gas that ultimately caused their injuries. *See* Dkt. 29 at 15–17. These limited facts and stacked inferences are insufficient to demonstrate proximate cause, whether it is considered under the rubric of foreseeability, directness, or the substantiality of the Defendants' conduct.

Moreover, as argued by Defendants, the Gulf War Veterans' ATA claim also suffers from a layered problem concerning the enactment and effective dates of certain statutes. As explained above, the ATA requires the Gulf War Veterans to show that Defendants engaged in an act of international terrorism. *See* 18 U.S.C. § 2333(a). The ATA defines the term "international terrorism" through three requirements. *See* 18 U.S.C. § 2331(1). Pertinent here, the first requirement is that Defendants' activities must "involve violent acts or acts dangerous to human life" that violate U.S. or state criminal laws. *Id.* at § 2331(1)(A). The Gulf War Veterans identify 18 U.S.C. § 2339A, which criminalizes "provid[ing] material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of" any one of numerous

---

[with no applicable exception], [or have been] proffered by excludable 'expert' testimony." Dkt. 29 at 12. Even if the Court considers the evidence to which Defendants have made objections, summary judgment would still be appropriate because such evidence is insufficient to create a genuine dispute of material fact and avoid summary judgment. Accordingly, Defendants' objections to the Gulf War Veterans' summary judgment evidence are denied as moot.

specifically identified statutes, as being the United States law Defendants violated. 18 U.S.C. § 2339A(a). However, as pointed out by Defendants, Section 2339A was first enacted and became effective in September 1994—well after Defendants' supposed illegal acts. Further, out of the list of criminal statutes enumerated in Section 2339A, the Gulf War Veterans specify that Defendants supported the violation of 18 U.S.C. § 229, which criminalizes various types of conduct concerning chemical weapons. But Congress did not enact Section 229 until October 1998—again, well after Defendants' supposed illegal acts. Importantly, Congress did not make Section 2339A nor Section 229 effective for any time period before their enactment. Thus, this provides an additional reason why the Gulf War Veterans' ATA claim must fail. *See Lopez Ventura v. Sessions*, 907 F.3d 306, 311 (5th Cir. 2018) ("[T]he legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place. Congress may enact retroactive legislation if it does not offend a specific constitutional prohibition. But the Court requires that Congress legislate with a clear statement of retroactivity.") (internal quotation marks and citations omitted).

## II.   CIVIL CONSPIRACY

"An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)).

"A defendant's liability for civil conspiracy depends on participation in an underlying tort for which the plaintiff seeks to hold the defendant liable." *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). "[M]erely proving a joint intent to engage in the conduct that resulted in the injury is not sufficient to establish a cause of action for civil conspiracy." *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (internal quotation marks and citation omitted). Indeed, as explained by the Texas Supreme Court, an alleged conspirator can "only be liable for conspiracy if he agreed to the *injury* to be accomplished" because "agreeing to the *conduct* ultimately resulting in injury is not enough." *Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008) (citation omitted). And, importantly, "[a]n actionable conspiracy must consist of acts that would have been actionable against the conspirators individually." *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 381 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963)).

Defendants argue that the Gulf War Veterans' civil conspiracy claim must fail because it "has no valid underlying tort." Dkt. 17 at 28. Defendants contend that in the Active Complaint, the Gulf War Veterans identify only one supposed tort underlying their civil conspiracy claim: Defendants' violation of the EAA. Based on this fact, Defendants argue that "there is no private right of action under the EAA," and, the Gulf War Veterans "cannot use a civil conspiracy claim to pursue allegations of underlying misconduct that is not privately actionable." *Id.* at 29 (citation omitted). *See also Coleman v. Alcolac, Inc.*, 888 F. Supp. 1388, 1397 (S.D. Tex. 1995) ("The Export Administration Act creates criminal and civil sanctions, as well as administrative sanctions. It does not, however, give

15

rise to a private right of action to enforce its substantive provisions. In addition to its lack of an explicit private cause of action, it has also been held that the Export Administration Act does not create an implied private right either.") (citation omitted).

In response to Defendants' argument, the Gulf War Veterans do not dispute that the EAA does not create a private right of action. Instead, the Gulf War Veterans simply claim that the tort underlying their conspiracy claim is "assault/battery." Dkt. 24 at 36. This argument falls flat.

In the Active Complaint, the Gulf War Veterans clearly and unequivocally pled that "Alcolac and agents of the Iraqi government conspired with each other to knowingly violate provisions of the Export Administration Act . . . in order to accomplish the unlawful sale and shipment of large quantities of TDG to Iraq." Dkt. 14 at 22. This clear statement does not in any way reference a tort based on assault or battery—much less Defendants' agreement to participate in such torts. For this reason, the Court rejects the Gulf War Veterans' attempt to reframe its civil conspiracy claim. *See Wilson v. Byrd*, No. CV 15-00160-KD-N, 2016 WL 1573265, at *8 (S.D. Ala. Mar. 14, 2016) (explaining a plaintiff "cannot reframe or redraft his complaint in a response to summary judgment"). *See also Player v. Dallas Cty.*, No. 3:12-CV-3947-N, 2014 WL 12834581, at *3 (N.D. Tex. Feb. 19, 2014) ("A claim raised for the first time in response to summary judgment is not properly before the Court.") (collecting cases). The Active Complaint relies entirely on an alleged violation of the EAA to support a civil conspiracy claim, but such a claim fails because, as argued by Defendants, the EAA does not create a private right of action. "Since there is no private right of action under the [EAA], there can be no conspiracy claim based

16

on such a violation." *Conger v. Danek Med., Inc.*, 27 F. Supp. 2d 717, 720 (N.D. Tex. 1998). *See also Wilmington Tr. NA v. Robertson*, No. 3:18-CV-0075-B, 2019 WL 585443, at *3 (N.D. Tex. Feb. 13, 2019) ("the Court joins others in finding that a civil conspiracy claim based on . . . alleged criminal acts [that do not provide a private cause of action] would also fail as a matter of law") (citations omitted); *Tummel v. Milane*, No. 7:18-CV-339, 2019 WL 366708, at *6–8 (S.D. Tex. Jan. 30, 2019) (dismissing all civil conspiracy claims because underlying federal and state statutes did not create a private right of action); *Thompson v. Wells Fargo Bank, N.A.*, No. H-15-598, 2016 WL 164114, at *3 (S.D. Tex. Jan. 14, 2016) (dismissing all conspiracy claims where underlying federal statutes did not create a private cause of action); *McPeters v. LexisNexis*, 11 F. Supp. 3d 789, 800 (S.D. Tex. 2014) ("where a private right of action does not exist for the violation of a particular statute, a plaintiff cannot 'create' one by alleging that the violation of that statute nevertheless satisfies an element of another claim") (citing *SCI Tex. Funeral Servs., Inc. v. Hijar*, 214 S.W.3d 148, 154 (Tex. App.—El Paso 2007, pet. denied)). Accordingly, the Gulf War Veterans' civil conspiracy claim must fail.

### III. FRAUDULENT TRANSFERS

"A plaintiff must satisfy three elements to establish a claim under TUFTA: (1) a debtor-creditor relationship must exist between the parties; (2) the debtor must have incurred an obligation; and (3) the debtor must have incurred the obligation with the actual intent to hinder, delay, or defraud the creditor." *BAC Home Loans Servicing, LP v. Tex. Realty Holdings, LLC*, 901 F. Supp. 2d 884, 915 (S.D. Tex. 2012).

Under TUFTA, a "creditor" is a person "who has a claim." TEX. BUS. & COMM. CODE § 24.002(4). A "claim" is "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 24.002(3). And a "debtor" is any "person who is liable on a claim." *Id.* § 24.002(6).

Defendants argue that if the Gulf War Veterans' ATA and civil conspiracy claims fail, their TUFTA claim must also fail. *See* Dkt. 17 at 31. In response, the Gulf War Veterans do not contest this proposition; in fact, they simply contend that "[b]ecause Plaintiffs have presented sufficient evidence regarding their ATA and civil conspiracy claims, this issue is moot." Dkt. 24 at 21 n.70. The Gulf War Veterans are mistaken. The Court has found that the Gulf War Veterans' ATA and civil conspiracy claims must fail. Left without any underlying claims, which served as the sole basis for the supposed debtor-creditor relationship between the parties, the Gulf War Veterans' TUFTA claim must also fail.

## CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Motion for Summary Judgment (Dkt. 17) be **GRANTED** and this suit be **DISMISSED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 6th day of September, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE